IN THE UNITED STATES DISTRICT COURT
FOR
THE THIRD CIRCUIT

**RECEIVED**

SEP 13 2017

Chambers of
Anne E. Thompson, U.S.D.J.

UNITED STATES OF AMERICA             *

v.                                    *

        Civil No.:
        Criminal No.: 3:12-cr-204-01

C. TATE GEORGE                        *

   Petitioner

               *   *   *

RECEIVED

SEP 13 2017

AT 8:30_____M
WILLIAM T. WALSH
CLERK

**PETITIONER'S REQUEST FOR LEAVE TO AMEND
MOTION TO VACATE, SET ASIDE OR CORRECT CONVICTION
AND SENTENCE PURSUANT TO 28 U.S.C. SECTION 2255 WITH AFFIDAVIT**

**NOW COMES** the Petitioner C. Tate George, pro se, and requests this Honorable Court for leave to amend his pending motion pursuant to 28 U.S.C. Section 2255, and states as follows:

1. That the following proposed amendment is submitted to the court to correct certain discrepancies in the pending Section 2255 petition. This amendment is presented in the form of an affidavit duly signed by Petitioner.

2. That during my trial in 2013, the government subpoenaed documents it later claimed not to have copies thereof right before Petitioner testified on his own behalf. My former attorney Mr. Schafer informed me of several boxes he had received from the government prior to trial. Petitioner recently received copies of his trial transcripts and discovered that on September 23, 2013 (during trial proceedings) that these boxes of discovery were actually received by his former attorney John Kaley's office,

-1-

and not the government as indicated in Petitioner's Section 2255 motion.

3. That in the transcript dated September 23, 2013, Mr. Schafer states that he had just received six to seven boxes from John Kaley's office that he had not reviewed prior to trial.

4. That attached hereto is a copy of the subpoena delivered to Petitioner during trial requesting documents which he had no access to prior to trial. In his Rule 33 filing and hearing, Petitioner laid out evidence that was "blocked" by the government on discs and emails by means of a subpoena on the AOL Online Service that would have exposed all government witnesses to perjury resulting in a jury verdict of not guilty.

5. Petitioner states in his Section 2255 petition that the signed release was in the boxes handed over during the trial. In truth, the said release was retrieved from the blocked discs provided me post-trial by the government through Mr. Schafer as well as a copy that was in the boxes handed over by attorney John Kaley right before trial. Remember, Mr. Schafer failed to review the contents of these boxes prior to trial.

**WHEREFORE**, the Petitioner C. Tate George, pro se, requests this Honorable Court for leave to amend his Section 2255 motion to include the foregoing clarification of facts.

### AFFIDAVIT

I **HEREBY CERTIFY** that a copy of the foregoing "Request for Leave to amend the Section 2255 motion" is based upon facts that are true and correct to the best of my knowledge and belief under penalty of perjury as per 28 U.S.C. Section 1746

*C. Tate George*, pro se

**CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a copy of the foregoing Request for Leave to Amend was mailed on this 27th day of August, 2017, by first-class mail, postage prepaid to:

Bruce P. Keller, AUSA
Office of the U.S. Attorney
970 Broad Street
Rm. 700
Newark, NJ 07102

C. Tate George, pro se
Fed. No. 63223-050
FCI Fort Dix
Box 2000
Joint Base MDL, NJ
08640-5433

EXHIBIT "A"

(EXCERPTS FROM TRIAL TRANSCRIPT)

1  could highlight the paragraph from "accordingly" down to the
2  signature of the judge or the clerk.
3         Judge, if I could read this one paragraph into the
4  record.
5         THE COURT: Any objection?
6         MR. INTRATER: No, Your Honor.
7         THE COURT: Okay.
8         MR. SCHAFER: "Accordingly, we reverse the trial
9  judge's January 5th, 2011, orders granting summary judgement
10 to the city and granting summary judgement to Gemennessee in
11 the foreclosure matter. We affirm the January 5th, 2011,
12 order denying East Orange Housing Authority's motion for
13 summary judgement and we reverse the December 21st, 2011,
14 final judgment of the tax sale certificate foreclosure in
15 favor of Gemennessee. We remand to the trial court for
16 further proceedings consistent with this opinion. Affirmed in
17 part; reversed in part; and remanded. We do not retain
18 jurisdiction."
19        Your Honor, at this point --
20        THE COURT: Counsel, can I see you at the side,
21 please?
22        (Whereupon the following occurred at side-bar:).
23        THE COURT: I really try not to cut you off in
24 mid-sentence, but I just wanted to know what you were about to
25 say.

1         MR. SCHAFER: Mr. George is going to testify.
2         MR. SHUMOFSKY: We can excuse the jury so the
3  defendant can have an Advice of Rights before he testifies.
4  The Government would ask for that.
5         THE COURT: Okay. A little recess.
6         (End of side-bar.)
7         We're going to have a short recess, members of the
8  jury. We'll be back in 10 minutes.
9         (The jury leaves the courtroom.)
10        THE COURT: We should do that now, counsel.
11        The Government has requested that there be a colloquy
12 on the record regarding defendant's right to testify and his
13 corresponding right not to testify. We have been given no
14 protocol for this type of a proceeding. Do you have a
15 suggestion, Mr. Shumofsky?
16        MR. SHUMOFSKY: I would just like the defendant --
17 the Government ask he be aware he has a right not to testify,
18 that he will be testifying under oath, that he has no
19 obligation to testify at this point in trial, any statements
20 he makes that not only can be used against him in this trial,
21 if they are turn out to be untrue and they are of a material
22 nature could be subject to a subsequent perjury proceeding
23 against him. I want to make sure he is aware of all those
24 things before he takes the stand in this matter. And, of
25 course, please emphasize -- thank you, Mr. Intrater -- to the

151
— COLLOQUY —

```
 1  defendant that the Government's burden remains unchanged.  The
 2  burden is on the Government, so he has no reason to testify,
 3  but if he does do that I want to make sure he is aware of his
 4  rights before he takes the stand.
 5          THE COURT:  Mr. Schafer or counsel?
 6          MR. SCHAFER:  Your Honor, I have made my client aware
 7  of that.  I don't know whether this is related to this
 8  procedure here, but we received a subpoena on Friday night
 9  at -- I received it at approximately 5:24 p.m.  I just
10  happened to be in the office.  And it was to Mr. George and/or
11  The George Group, and it was, I guess, about a three-page
12  subpoena for documents related to this particular trial.  As
13  far as I know, most of Mr. George's records are in my office
14  scattered all over the office.  I picked them up from his
15  former attorney Mr. Kaley.  Mr. George has been giving me a
16  couple things here and there, but 99 percent of this stuff was
17  from Mr. Kaley.  It is about six or seven boxes.
18          The subpoena was due to be returned today.  We did not
19  have time to search through these boxes, and I assume that
20  I'll have time after the trial is done to go through this and
21  see if we have any of the information requested.  But I just
22  thought we should put that on the record.
23          THE COURT:  Mr. Shumofsky?
24          MR. SHUMOFSKY:  Your Honor, the defendant has known
25  about this case since September of 2011 when he was arrested.
```

152
— COLLOQUY —

```
 1  He was indicted in 2012.  We didn't show up at the beginning
 2  of jury selection to tell the defendant we were prosecuting
 3  him.  He has known this for a long time.  The subject matter
 4  of the subpoena covers things the defendant should be aware
 5  of.  There has been some evidence in this trial to suggest
 6  that the defendant has fabricated documents.  The Government
 7  learned that the defendant would be taking the stand and
 8  served a subpoenaed to that ilk.  The Government suggests if
 9  these documents are in Mr. Schafer's office we adjourn for the
10  day right now, the defendant go back to Mr. Schafer's office,
11  spend time before cross-examination or his testimony in this
12  case considering what's at risk for the defendant, look over
13  those things and find what's relevant.
14          THE COURT:  He would not -- the defendant would not
15  have to respond to a subpoena from the Government if he
16  exercised his right not to testify because it would extend,
17  also, to his right not to have to produce any documents.
18          MR. SHUMOFSKY:  Yes, Your Honor, I will add that the
19  Government also served a subpoena on The George Group L.L.C.
20  and an entity that does not of a Fifth Amendment right, but,
21  certainly, if the defendant does take the stand, and those
22  documents are not available to him, and he is not available to
23  respond to certain questions the Government may have, we want
24  to make sure he has the opportunity to find those things, if
25  necessary, if they're in Mr. Schafer's office.
```

1       THE COURT:  Yes?
2       MR. INTRATER:  I'm sorry, Your Honor.  Just to add to
3  what Mr. Shumofsky said, the purpose of the subpoena,
4  obviously, is that to the extent on direct examination Tate
5  George makes certain claims, which claims would be supported
6  by the existence of documents supporting his version of
7  events, we want to make sure that there are no documents
8  supporting Mr. George's version of events.  We're confident
9  that there are not, but just to put everybody on notice during
10 cross-examination we will ask him if these supposed oral
11 modifications of important documents were made, where are the
12 modified documents?  Where are the amendments?  Where are the
13 signed versions by the counter parties?  That's what we're
14 looking for with the vast majority of what's requested by the
15 subpoena.
16      THE COURT:  All right.  Well, Mr. Schafer and Ms.
17 Bergman, if the table -- if the roles were reversed here and
18 you needed time to get ready for cross-examination, and you
19 needed to make sure that the witness was given a full
20 opportunity to get their documents reviewed before they would
21 have to be subject to cross-examination by you, I think you
22 would properly be requesting a brief recess, and I think that
23 the Government's request is appropriate.
24      MR. SCHAFER:  Your Honor, with all due respect, I
25 don't want -- we have a jury here, and I can't in a couple

1  hours come back and say that this information isn't here.  I
2  mean, perhaps the Court should review the subpoena for itself
3  to look at what they're asking for.  I think if they could
4  point to, number one, what documents that they believe are not
5  true that have already been submitted, perhaps we can limit
6  this whole search and tell them, look, we don't have anymore
7  documents of that ilk, but I don't want to have the jury
8  waiting and me to come back in whatever period of time is
9  elapsed and say, look, we don't have these documents.
10      THE COURT:  Why don't you just turn the documents
11 over wholesale to the Government and when they have reviewed
12 them they can let you know that they're ready?
13      MR. SCHAFER:  This is -- as I said, Your Honor, it is
14 like seven boxes of documents.
15      THE COURT:  Somebody has got to review them.
16      MR. SHUMOFSKY:  The one thing the Government agrees
17 with the defense on is the expeditious nature in which this
18 should be done.  The one person who is most familiar with
19 those documents is the defendant.  It seems that if he is
20 going to take the stand we should all be in a position to know
21 if the documents do exist, if the search has been made, and if
22 they don't exist that nothing has been found, and that's the
23 total amount of documents.  I mean, right now we're talking
24 about six or seven boxes of documents in Mr. Schafer's office.
25 Are there -- I would like to know, are there 20 boxes of

COLLOQUY

documents sitting in Howard Trachtenberg's office in Florida? If that's the case, then, obviously, adjourning it for three weeks would be something the Government could consider, but, obviously, is not as realistic. But we would like to know if that's something out there that defendant is going the rely on if he takes the stand and says, Well, I have it, it is in a safe deposit box down in Florida in Boca Raton or whatever the case may be, but the stuff, as you can imagine -- Your Honor, I'm happy to hand you a copy of the subpoena. It is very straightforward things.

THE COURT: It is business records, right?

MR. SHUMOFSKY: Business records with respect to every single investor that has testified in this case. We ask for any amendment with respect to the execution of documents.

With respect to -- and I have a copy I'm handing Your Honor with respect to the certain e-mails that Your Honor saw during the testimony of some of the individuals, for example, Mr. Mellinger there was representations by the defendant that he was breaking a CD and that the money would be available or certificate of deposit and the money would be available for Mr. Mellinger. I wanted to know the CD, what's the date of it, are there any documents to support that representation? What efforts were made with the bank to cash in on that CD? All things of that nature when representations were made to certain defendants about money.

To the same ilk, there was representations of Brevin Knight in August and September of 2009. I have a check, I'm sending you the check, wherever you want to be in the world I'm sending it to you, it is there. A month went by. Brevin Knight said, I haven't gotten the check. I want to ask the defendant if there is, does that check ever exist? It would be very good evidence for him if he showed us the check saying here is the check, I wrote it out from this account, this is what happened. I don't know why Mr. Knight didn't get it. But we don't want to be sitting here in cross-examination and for the defendant to flop in our lap, you know, I decided to take the stand finally. I have known about this case for two years. This is my day in court. I wish somebody told me I could have got this stuff together. So we want to afford him that opportunity.

MR. SCHAFER: Your Honor, I would ask the Court if we could recess today, we'll send the jury home, and we will have an answer everything tomorrow morning either the documents or a no to the documents.

THE COURT: I think, Mr. Schafer, that would be a very sensible course of action.

MR. SCHAFER: Thank you, Your Honor.

THE COURT: Thank you. So I'll tell the jury to come back at 10. We'll convene here at nine. And we'll see where we go from there.

1   Let me see you at the side briefly on the record.
2   (Whereupon the following occurred at side-bar:)
3   THE COURT:  I don't plan to bring the jury back in
4  the room just to tell them that we're adjourned for the day.
5  Miss Heffner is very experienced at telling jurors as the case
6  goes on sometimes that there are some gaps.  So that's fine.
7  It is 3:00 now for the record.  The reason I wanted to see you
8  at the side is that this is a public proceeding, obviously,
9  this trial is, but that we do have the sealed matter involving
10  the records of Charles Houlihan that Mr. Houlihan evidently
11  hasn't produced yet because he's not had a waiver of the
12  attorney/client privilege provided to him by Mr. George.  I
13  can foresee that this is going to become problematical if
14  that's his answer to everything.  Mr. Houlihan keeps my bank
15  records and my business records from that period of time.  I
16  don't know how to address it, but I can see it coming.
17   MR. INTRATER:  There's a limitation to it all.  All
18  we're looking for is -- all we're looking for by the subpoena
19  is for records in Mr. George's possession of all of these
20  modifications to the documents of all of the payments that he
21  sent to his investors that were never received, all of the
22  statements that Mr. George made in the e-mails and in letters
23  that there's no backup for.
24   MR. SHUMOFSKY:  But I would add, Your Honor, to the
25  extent that there's a file in Charles Houlihan's office that

1  has nothing to do with attorney/client privilege if there's a
2  document in --
3   THE COURT:  A business record?
4   MR. SHUMOFSKY:  A business record of the George Group
5  that demonstrates there's an amendment to a promissory note
6  for any of the investors that is something if for some reason
7  Charles Houlihan is hanging on to he should have to produce
8  that to Mr. George in defense of this case.
9   One moment, please.
10   If for some reason Mr. Houlihan is arguing I'm not
11  handing anything over until I'm paid that might work civilly,
12  but considering Mr. George is under federal indictment the day
13  has come for him to testify, if that is the case we ask that
14  be brought to our attention so we can ask Your Honor to get
15  involved to get a necessary order to hand over the records
16  back to Mr. George, so they can be produced in court.
17   THE COURT:  I am adjourning the jury now, but we need
18  to bring in by telephone as soon as possible without impeding
19  the document review that defense counsel and defendant will be
20  doing, we need to bring in counsel for Mr. Houlihan, and I
21  will tell them that business records would never be privileged
22  and those would have to be provided to Mr. George to use in
23  his defense.
24   MR. INTRATER:  Exactly.
25   THE COURT:  If they exist.  Okay?  All right.

———COLLOQUY———

1 Anything else? Good. Okay.
2     (End of side-bar.)
3     THE COURT: I hereby declare a recess because of this
4 subpoena matter, and we will resume the trial in the morning
5 at 9:00 a.m. so that the defense side can have an opportunity
6 to respond to the subpoena. I'll instruct the courtroom
7 deputy to tell the jury to be here to start at 10.
8     MR. INTRATER: Thank you, Your Honor.
9     THE COURT: And then, counsel, you are required to
10 stay behind because we have to have a sealed proceeding after
11 the courtroom is clear.
12     MR. INTRATER: Yes, Your Honor.
13     (Brief Recess)
14 (Whereupon, an on the record sealed matter was conducted.)
15     THE COURT: Now we're back on the record in the
16 pending trial case, and I'll just take your appearances,
17 please.
18     MR. INTRATER: Zach Intrater for the United States.
19     MR. SCHAFER: Dave Schaffer for Tate George.
20     MS. BERGMAN: Andrea Bergman for Tate George.
21     THE COURT: Its 4:00 now, and we have had the
22 developments that the Government served a document subpoena on
23 the defendant, and the defense counsel will be reviewing those
24 documents for material that's responsive to the subpoena, and
25 it is a pretty large volume of documents, and defense counsel

———COLLOQUY———

1 may need to do a little bit of extra investigation, as well.
2 And I would like to afford them that opportunity, but it can't
3 all be accomplished realistically by tomorrow morning, so I
4 hereby direct that the jury be instructed that they not come
5 to trial tomorrow and that we'll resume the trial Wednesday
6 morning. We'll take it day-by-day is all I can say. But I
7 would like if possible tomorrow for us to conduct the jury
8 instruction charge conference so that we'll have that already
9 taken care of and can move along smoothly with the jury
10 whenever we're able to reassemble with them. Is that
11 acceptable?
12     MS. BERGMAN: Yes.
13     MR. INTRATER: It is to the Government.
14     MR. SCHAFER: Your Honor, what time would you like us
15 for the charge conference?
16     THE COURT: Why don't you -- we can talk by phone in
17 the morning since we don't need to have the jury here in at
18 10, and I'm much more interested that you pursue this document
19 issue. We can get around to the charge conference any time
20 tomorrow at your convenience because, obviously, our day is
21 set aside for the trial. So talk to the courtroom deputy.
22     MR. SCHAFER: Thank you, Your Honor.
23     THE COURT: We'll do the conference in person, but
24 scheduling it tomorrow will be secondary to whatever you need
25 to do for further trial preparation.



161

———COLLOQUY———

1    MR. INTRATER:  Thank you, Your Honor.

2    THE COURT:  Okay.  Good.

3    (Proceedings concluded at 4:00 p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*United States District Court*
*Trenton, New Jersey*

**EXHIBIT "B"**

**(COPY OF SUBPOENA)**

*During the trial*



US v. George, 12-204 (MLC)
Shumofsky, Joseph (USANJ)
to:
Andrea_Bergman@fd.org, David_Schafer@fd.org
09/20/2013 05:24 PM
Cc:
"Intrater, Zach (USANJ)", "Shumofsky, Joseph (USANJ)"
Hide Details
From: "Shumofsky, Joseph (USANJ)" <Joseph.Shumofsky@usdoj.gov>
To: "Andrea_Bergman@fd.org" <Andrea_Bergman@fd.org>, "David_Schafer@fd.org" <David_Schafer@fd.org>,
Cc: "Intrater, Zach (USANJ)" <Zach.Intrater@usdoj.gov>, "Shumofsky, Joseph (USANJ)" <Joseph.Shumofsky@usdoj.gov>

1 Attachment



US v. George, 12-204 (MLC) - Subpoena.pdf

Andrea and David,

Attached plea find a subpoena directed to The George Group, LLC and/or the defendant.

Joseph

Joseph

Joseph B. Shumofsky
Assistant United States Attorney
United States Attorney's Office
District of New Jersey
970 Broad Street, 6th Floor
Newark, New Jersey 07102
Phone: 973-297-2098
Fax: 973-297-2045
Email: joseph.shumofsky@usdoj.gov



DEFENDANT'S EXHIBIT

The George Group LLC and/or C. Tate George
c/o Office of the Federal Public Defender
22 South Clinton Avenue
Station Plaza No. 4, Fourth Floor
Trenton, New Jersey 08609
Attn.: Andrea Bergman, Esq. and David E. Schafer, Esq.

## SUBPOENA ATTACHMENT

Please provide the following:

*H* 1. All records relating to written modifications to any contract, investment agreement, finance agreement, promissory note, escrow agreement, or guarantee made between The George Group, LLC, C. Tate George, Alexys Heights Development, LLC, Howard Trachtenberg or any other entity owned or controlled by C. Tate George and any of the following individuals

   a. Ralph Ramsey;
   b. Dwayne Taylor;
   c. Louis Mellinger;
   d. Brevin Knight;
   e. Naiima Fauntleroy;
   f. Randal Pinkett; and/or
   g. Charlie Villanueva.

2. All records related to payments made to Louis Mellinger as partial repayment of his investment of $150,000 with The George Group, LLC and C. Tate George, including

   a. all records of a fax request to the bank on or about December 21, 2007 to wire money to Louis Mellinger (Gov't Ex. 207); *?*

   b. all records concerning the release of funds from escrow to Louis Mellinger, a wire sent out in and around January 25, 2008 to Louis Mellinger, and/or communications with the bank in and around January 25, 2008 to wire out funds to Louis Mellinger (Gov't Ex. 208); *NO*

   c. all records of a wire sent out in and around February 20, 2008 to Louis Mellinger and/or communications with the bank in and around February 20, 2008 to wire out funds to Louis Mellinger (Gov't Ex. 208); *NO*

   d. all records of the receipt of funds for a deal that closed on or about February 29, 2008 to be sent to Louis Mellinger (Gov't Ex. 212); *NO*

   e. all records related to a $75,000 certificate of deposit ("CD") and the cashing of that CD on or about April 9, 2008 (Gov't Ex. 223); and *NOT MINE*

   f. all records related to debt that Jason Matthews owes to The George Group, LLC, Tate George, or any other entity controlled by C. Tate George (Gov't Ex. 263). *NO*

Page 1 of 3

3. All records related to payments made to Brevin Knight as partial repayment of his investment of $300,000 with The George Group, LLC and C. Tate George, including

   a. all records concerning the release of funds from escrow to Brevin Knight, a wire sent out in and around June 12, 2008 to Brevin Knight, and/or communications with the bank in and around June 12, 2008 to wire out funds to Brevin Knight (Gov't Ex. 419);

   b. all records related to a life insurance policy and money received from a life insurance policy on or about July 20, 2009, including delivery of any payment to Brevin Knight (Gov't Ex. 423);

   c. all records of payment to Brevin Knight on or about August 10, 2009 (Gov't Ex. 424); and

   d. all records of payment to Brevin Knight on or about September 9, 2009 (Gov't Ex. 424).

4. All records related to payments made to Naiima Fauntleroy as partial repayment of her investment of $46,000 with The George Group, LLC and C. Tate George, including

   a. all records concerning the release of funds from escrow to Naiima Fauntleroy in and around April 1, 2008, and/or communications with the bank to wire out funds to Naiima Fauntleroy (Gov't Ex. 4);

   b. all records of a wire sent out in and around October 23, 2009 to Naiima Fauntleroy and/or communications with the bank to wire out funds to Naiima Fauntleroy (Gov't Exs. 6 and 7);

   c. all records relating to a lawsuit initiated by The George Group, LLC, C. Tate George, or any other entity controlled by C. Tate George against the East Orange Housing Authority in and around March 24, 2011 (Gov't Ex. 8).

5. All records related to any capitalization of The George Group, LLC, C. Tate George, or any other entity controlled by C. Tate George by Howard Trachtenberg and/or Elaine Trachtenberg;

6. All records related to any involvement of The George Group, LLC, C. Tate George or any other entity controlled by C. Tate George in the following real estate developments:

   a. Glendale Villas: 21101 Voyage Boulevard, Land O'Lakes, FL 34639;
   b. Chelsea Meadows: 22620 Gage Loop, #30, Land O'Lakes, FL 34639;
   c. Venetia Country Club: 200 Country Club Drive, Largo, FL 33771;
   d. The Laurels at Sherwood: 6065 10th Avenue, North Greenacres, FL 33463;
   e. Kentwood Park: 2302 Maki Road, Plant City, FL 33563;
   f. Sienna Park: 3441 Clark Road, Sarasota, FL 34231; and
   g. Garden Grove, 5719 Granada Drive, Sarasota, FL 34231;

7. All records related to any business relationship between The George Group, LLC, C. Tate George or any other entity controlled by C. Tate George with Juan Puig and/or the Puig Development Group; *No*

8. All records concerning the completion of the development and/or redevelopment of any real estate by The George Group, LLC, C. Tate George or any other entity controlled by C. Tate George, and the value of those real estate development(s) and/or redevelopment(s). *yes*

*H* 9. All records regarding any business relationship between The George Group, LLC, C. Tate George or any other entity controlled by C. Tate George and Charles D. Houlihan, Jr., other than an attorney-client relationship; *No*

10. All records concerning any real estate closing related to The George Group, LLC, C. Tate George or any other entity controlled by C. Tate George that occurred on or about November 14, 2007 (Gov't Ex. 126); *Already given*

11. All records relating to the source of the money deposited into TD Bank account #4283717771 in the name of Claude Tate George (Gov't Ex. 908); and *yes*

12. All records demonstrating the association of C. Tate George with 6022 NW 32nd Court, Boca Raton, FL 33496, following October 20, 2010. *No*

Page 3 of 3

N. Steinert
c/o C. Tate George
21/14 28th St BSMNT
Astoria, NY 11102





7017 1450 0000 1864 6716

U.S. POSTAGE PAID
ASTORIA, NY
11105
SEP 11, 17
AMOUNT
$7.71
R2304P118666-15

Hon. Anne E Thompson
Clarkson S. Fisher Building
402 E State St Rm 4W
Trenton, NJ 08608